*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. K. MILLER, Minor.

UNPUBLISHED
January 28, 2020

No. 349156
Wayne Circuit Court
Family Division
LC No. 11-501583-NA

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's termination of her parental rights to her son, AM, under MCL 712A.19b(3)(c)(*i*), (g), (j), and (l). We affirm.

## I. BACKGROUND

Respondent is the biological mother of four children, none of which are currently in her care. Respondent's mother was appointed the guardian of respondent's two eldest children—born in 2003 and 2007—and obtained legal custody of them in May 2010. About the time of this custody change, respondent gave birth to a third child, LNB. Approximately one year after LNB's birth, the child was removed from respondent's care after respondent—who was considered severely cognitively impaired at the time—failed to provide adequate care for LNB. Respondent was ordered to comply with a parent-agency treatment plan, but failed to benefit from the plan. Accordingly, respondent's parental rights to LNB were terminated in 2015.

The child at issue in these proceedings, AM, was born to respondent in December 2016. Respondent did not know who AM's father was and a putative father did not appear during the proceedings. At the time of AM's birth, respondent was living with a housemate and her housemate's mother. Four days after AM's birth, petitioner moved the trial court to terminate respondent's parental rights, indicating that respondent was "cognitively delayed" and unable to care for AM, as evidenced by her inability to care for LNB. Before a hearing could be held on the permanent-custody petition, however, petitioner amended the petition to seek temporary custody of AM, based on respondent's agreement to comply with a treatment plan. The trial court authorized the petition on the basis of respondent's admission that she was unable to provide proper care and custody for AM—particularly in light of her previous inability to care for LNB.

-1-

Petitioner placed AM in non-relative foster care; AM has since been in three separate foster homes. Petitioner provided respondent with reunification services for more than two years. For the most part, respondent engaged with the services—participating in individual therapy, parenting classes, infant mental-health services, and parent-partner services. Respondent, however, did not benefit from the services. After two years, respondent was unable to independently care for the child. Respondent's supportive-visitation specialist opined that there was no foreseeable end to the services that would result in respondent's safe reunification with the child. Respondent was unable to understand AM's development, believing that AM was lazy and did not need to attend occupational therapy or physical therapy, despite AM's developmental delays. Respondent's therapist reported that respondent had not benefited from therapy and respondent believed that she did not need therapy. During unsupervised home visits, respondent's housemate assisted respondent in caring for AM; however, the housemate's willingness to continue to assist respondent's parenting wavered during the proceedings and, at one point, it was not clear that respondent would continue living with her housemate. The housemate reported that respondent was unable to provide basic care for the child.

Throughout the case, AM's foster families provided for AM's needs and the final foster family was willing to plan long-term for AM. AM received occupational therapy, physical therapy, and speech therapy under the trial court's jurisdiction. Respondent, however, believed that AM would not require such services in her care. AM's foster-care director testified that AM was not primarily attached to respondent and did not look to her for his basic needs. Respondent's caseworker believed that respondent would never be able to provide for AM without 24-hour assistance.

Petitioner filed a supplemental petition to terminate respondent's parental rights in December 2018. The trial court terminated respondent's parental rights to AM in February 2019. The trial court concluded that, despite respondent's compliance with the treatment plan, after two years of services, respondent was still unable to properly care for AM and she would not be in a position to provide for AM in the foreseeable future. The trial court found that, after being in foster care his entire life, AM needed to be in a stable environment where his needs could be met. Because respondent was unable to provide this environment—whereas AM was thriving with his foster family—the trial court concluded that termination of respondent's parental rights was in AM's best interests. This appeal followed.

## I. ANALYSIS

Respondent challenges both the trial court's conclusion that statutory grounds existed to terminate her parental rights and its finding that termination was in AM's best interests. "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). Once a ground for termination is established, the trial court must order termination of parental rights if it finds that termination is in the child's best interests. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "We review for clear error both the court's decision that a ground for termination has been proven by clear and convincing evidence and, where appropriate, the court's decision regarding the child's best interest." *In re Trejo*, 462 Mich 341, 356-357; 612 NW2d 407 (2000). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a

mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "To determine whether termination of parental rights is in a child's best interests, the court should consider a wide variety of factors that may include 'the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home.' " *Id*., quoting *In re Olive/Metts*, 297 Mich App at 41-42. Other relevant factors include any relevant "history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *Id*. at 714.

Among other subsections, the trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), which provides that a trial court may terminate a parent's parental rights upon clear and convincing evidence that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds [. . . ]:

> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

AM came under the trial court's jurisdiction for the same reason as her brother: respondent, suffering from cognitive impairments, was unable to provide for her care. After two years of services, respondent was still unable to provide independently for AM's care. While it is true that respondent did engage in her treatment plan and wanted to plan for AM, it appears that respondent does not have the ability to safely care for the child.

Respondent's therapist reported that respondent did not benefit from individual therapy and her supportive-visitation specialist opined that there was no foreseeable end-date for the services or reunification with the child. Indeed, respondent's caseworker believed that respondent would never be able to provide for the child without full-time assistance, of which petitioner could not provide. While respondent did receive assistance from her housemate, the housemate's continued involvement in the child's care was not guaranteed as the housemate expressed that she did not want to care for the child at one point in the proceedings; indeed, respondent's cohabitation with the housemate was also in jeopardy at times. Although respondent completed the tasks asked of her, she opined on several occasions that neither she nor the child required the provided services, indicating that respondent is unaware of the child's needs and her own parental limitations.

To her credit, the record reveals that respondent is committed to the child and willing to plan for him. Yet, the record also makes clear that respondent is unlikely to ever develop the

skills necessary to provide safely for his care. Accordingly, we agree with the trial court that statutory grounds existed to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*). "[B]ecause the petitioner need only establish one ground for termination," we need not address the trial court's conclusions under any other subsection. *In re Trejo*, 462 Mich at 360.

Given the preceding analysis, we also agree with the trial court that termination of respondent's parental rights was in AM's best interests. AM has been in foster care his entire life and, while a bond exists between him and respondent, AM does not look to respondent for his basic needs. AM thrived in his foster placement and the foster family expressed a willingness to provide for him long-term. Although respondent's commitment to AM is laudable, respondent is unlikely to ever develop the skills necessary to provide independently for AM's care. After more than two years in foster placement, we agree with the trial court that AM deserved permanency and stability, which respondent was unable to provide. Accordingly, we are unable to find error in the trial court's best-interests analysis.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford